UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| KARAN L. GILDAY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | 1:09-cv-229-TWP-TAB |
|  | ) |  |
| KENRA, LTD., et al., | ) |  |
| Defendants. | ) |  |

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

**I.      Introduction**

The motion for protective order and related matters pending before the Court raise challenging and important issues regarding application and waiver of the attorney-client privilege in the context of corporate succession and former employees. Protection of trade secrets and sensitive nonparty information also is implicated. As explained below, the Court finds Defendants' motion for protective order largely well taken, and upholds the attorney-client privilege and the sensitivity of the documents in question, with only one relatively minor exception.

**II.     Background**

Plaintiff Karan Gilday was Defendant Kenra, LLC's human resources director from 1998 until February 1, 2007. On February 1, 2007, Kenra, Ltd. purchased the assets of Kenra, LLC, and Gilday continued in her HR role until she was terminated on October 1, 2007. [Docket No. 117-1 at ¶ 2.] Shortly before her termination, Gilday became concerned that false allegations were being made against her, and she copied several documents in preparation for a meeting with her supervisor. [Docket No. 113, Ex. B at 76, 81.] Some of these documents, which

contain communications between Gilday and Kenra's outside employment law counsel, made their way to the docket in this case as exhibits in support of Gilday's summary judgment opposition.[1] Kenra requested that Gilday return these documents—which it considered "misappropriated"—but Gilday declined. Upon further review of Gilday's summary judgment opposition, Kenra identified several documents which it believed contained confidential information or inadvertently produced privileged documents, prompting Kenra to seek a protective order. [Docket No. 112.]

### III. Discussion

Kenra asks the Court to (1) order Gilday to file unsealed copies of her summary judgment materials with the redactions proposed by Kenra, (2) determine whether Kenra's proposed redactions are appropriate, and (3) order Gilday to return all originals and copies of privileged communications in her possession, custody, or control. [Docket No. 113 at 12.] Kenra's motion focuses first on privileged materials, and second on documents containing trade secrets and sensitive nonparty information.

    *A.    Attorney-client privilege*

Gilday argues that none of the disputed documents are covered by the attorney-client privilege because (1) Kenra has not proven the elements of the privilege, (2) the privilege did not

---

[1] Fifty-five exhibits should have been electronically filed with Gilday's summary judgment materials but were not. They were, however, provided to opposing counsel in accordance with the procedures for filing under seal. Gilday has since moved for leave to supplement her appendix, and Kenra consents to Gilday filing a supplement under seal. [Docket No. 138.] The Court therefore grants Gilday's motion. Given the difficulties Gilday has experienced with electronic filing throughout this case, the Court encourages Gilday's counsel to review the Court's electronic filing resources and contact the Clerk's office for further assistance if necessary to avoid additional filing problems and keep the docket as tidy as possible.

transfer from Kenra, LLC to Kenra, Ltd., (3) Gilday is authorized to waive the privilege and access the documents, and (4) Kenra waived the privilege by disclosing privileged documents.

1. Elements of privilege

The parties agree on the elements of attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Pippenger v. Gruppe*, 883 F. Supp. 1201, 1204 (S.D. Ind. 1994) (quoting *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). Their agreement ends there. Kenra argues that the documents are privileged because they contain Gilday's "confidential communications with [Kenra's] outside counsel on employment-related matters for the purpose of obtaining legal advice on behalf of her employer." [Docket No. 113 at 5.] Gilday responds that Kenra has not shown that the communications were confidential or related to professional advice, and suggests that "Kenra appears to claim that the emails are to or from a lawyer so they must be privileged." [Docket No. 116 at 8.]

The Court's review of Gilday's exhibits and Kenra's limited proposed redactions reveals that the documents contain confidential communications between Kenra's outside counsel and Gilday. Kenra's limited proposed redactions show that Kenra is not—as Gilday suggests—making a "blanket claim of privilege solely to keep truth out of the courtroom," or claiming that "the emails are to or from a lawyer so they must be privileged." [Docket No. 116 at 8.] Gilday's argument on this point fails. Thus, the attorney-client privilege remains at play.

2. Transfer of privilege

Gilday next argues that the privilege did not transfer from Kenra, LLC to Kenra, Ltd. because Kenra, Ltd. cannot speak for Kenra, LLC on the issue of Gilday's status as plan administrator, and Kenra has not shown why it is a successor. [Docket No. 116 at 8.] Kenra, Ltd. responds that it purchased substantially all of Kenra, LLC's assets and continued Kenra, LLC's operations "at the exact same location using the same computer systems, file cabinets, documents and other assets . . . . Kenra hired all of the Kenra, LLC employees, and it acquired Kenra, LLC employee records, including records relating to Kenra, LLC employee benefits." [Docket No. 131 at 7.]

The power to assert or waive a corporation's attorney-client privilege is an incident of control of the corporation. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985); *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 406 (N.D. Ill. 2007). Whether control transfers from one entity to another depends on the practical consequences of the transaction at issue. *Am Int'l*, 240 F.R.D. at 406–07. Acquisition of substantially all of a corporation's assets and continuity of business operations support transfer of the privilege.

Gilday does not challenge Kenra's assertion (made under Rule 11) that it purchased substantially all of Kenra, LLC's assets and continued Kenra, LLC's operations using the same location, equipment, and people. The authority to assert or waive Kenra, LLC's attorney-client privilege therefore passed to Kenra, Ltd. as an incident of corporate control.

3. Waiver by Gilday

Gilday further argues that because the legal advice was intended for her, she holds the privilege and is entitled to waive it. [Docket No. 116 at 11.] Kenra responds that it was the client and holds the privilege, and the fact that Gilday authored or accessed the communications does not give her authority to assert or waive the privilege. [Docket No. 131 at 8.] These arguments raise two questions: first, may Gilday waive the privilege; and second, may Kenra assert the privilege against her?

The answer to the first is well settled: Gilday may not waive the privilege because

> the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors. . . . Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

*Weintraub*, 471 U.S. at 348–49. Even though Gilday previously communicated with counsel as part of her duties, she is now "displaced" and is not part of Kenra's current management. Gilday therefore may not waive Kenra's privilege.

The answer to the second question is less clear because courts are split on whether a corporation may assert the privilege against a former employee who had access to the privileged material during his or her employment. *See Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1184–86 (D. Nev. 2008) (reviewing cases). The cases fall into two camps. One line of cases—relied on by Kenra—holds that the corporation is the client and that a former employee's right to access privilege documents terminates upon leaving the corporation. *E.g.*, *Montgomery*, 548 F. Supp. 2d at 1186–87; *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 276–77 (N.D. Ill. 2004); *Bushnell v. Vis Corp.*, No. C-95-04256 MHP, 1996 WL 506914, at *8 (N.D. Cal. Aug.

29, 1996); *Milroy v. Hanson*, 875 F. Supp. 646, 649–50 (D. Neb. 1995). The other line—cited by Gilday—applies the joint client exception and permits former employees to access documents created during their tenure. *E.g.*, *Gottlieb v. Wiles*, 143 F.R.D. 241, 247 (D. Colo. 1992); *Harris v. Wells*, No. B-89-391, 1990 WL 150445, at *3–4 (D. Conn. 1990); *Kirby v. Kirby*, 1987 WL 14862, at *7 (Del. Ch. July 29, 1987).

After reviewing these decisions, the Court concludes that the corporation-is-the-client approach is more persuasive. The *Montgomery* and *Dexia Credit Local* decisions are particularly thoughtful. As *Dexia Credit Local* explained:

> [O]nce [the former CEO's] control group status terminated, so too did his right of access to privileged documents of the corporation. A contrary rule—such as that set forth in *Gottlieb* . . . would undermine the privilege. People may come and go within a control group, but a corporation has a legitimate expectation that a person who leaves the control group no longer will be privy to privileged information. To rule otherwise would defeat that expectation, and could chill the willingness of control group members to speak candidly on paper (or, these days, in electronic media) about privileged matters, knowing that some day one of their number may leave the control group and become adverse (whether through litigation or business activity) to the corporation.

231 F.R.D. at 277. Moreover, the *Dexia Credit Local* court rejected *Gottlieb*'s joint client analogy because at no time are the employee and corporation joint clients—the corporation is always the client, though the employee may serve as a mouthpiece. *Id.* Finally, as the *Montgomery* court reasoned:

> [the former manager] is not suing on behalf of [the corporation] or in his capacity as a former manager or officer. Rather, [he] is suing to benefit himself individually—a perfectly acceptable position, but not one which should entitle him to [the corporation's] attorney-client privileged communications. . . . [He] is now adverse to [the corporation] and may not obtain privileged documents over the objection of current management. Moreover, even though [he] would have had access to such documents during his time at [the corporation], he still would have been duty-bound to keep such information confidential.

6

548 F. Supp. 2d at 1187. These rationales are sound, particularly given the revolving door that is a mainstay of today's corporate employment setting. Therefore, Kenra may assert the attorney-client privilege against Gilday, even as to privileged documents she accessed during her employment.

        4.      Waiver by Kenra

Finally, Gilday argues that Kenra waived the privilege by disclosing the documents in its November 2009 discovery responses and by referring Gilday to the same documents on March 25, 2010, in response to more discovery.[2] [Docket No. 116 at 1–2.] Kenra responds that it inadvertently produced some documents amid its over 97,000-page production, and that it only learned of the inadvertent production after it saw some of the privileged documents designated with Gilday's summary judgment materials. [Docket No. 113 at 7.]

A large part of Kenra's 97,000-page production occurred in November 2009, when Kenra produced 37,000 pages and a nine-page privilege log. Kenra claims that ten documents from this production—1J, 1AA, 1RR, 1SS, 1TT, 1UU, 1VV, 1WW, 1XX, and exhibit 23—were inadvertently produced, and that it has taken reasonable steps to avoid and correct the disclosure.

Federal Rule of Evidence 502 governs when disclosure of privileged materials waives the

---

[2] A related issue is whether Gilday is entitled to use copies of privileged documents she allegedly misappropriated before her departure (exhibits 1A, 1AA, and 1NNN). Gilday argues that although she took the documents, she did not misappropriate them because no other terminated employee was asked to return documents, and at least one other terminated employee took documents. But Gilday acknowledged that the documents were confidential Kenra property. [Docket No. 113, Ex. B at 82.] The fact that other employees took documents or were not asked to return documents is irrelevant here because Gilday has not described whether those documents were confidential or privileged, and those other employees are not engaged in litigation with Kenra. The Court will therefore consider exhibits 1A, 1AA, and 1NNN along with the other documents at issue.

7

privilege.[3] The rule was updated in 2008 to address "the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information." Fed. R. Evid. 502 advisory committee's note. Rule 502(b) provides:

> When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> > (1) the disclosure is inadvertent;
> >
> > (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> >
> > (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following federal Rule of Civil Procedure 26(b)(5)(B).

In this case there is no question that Kenra did not intentionally produce the privileged documents. Kenra's privilege log lists documents withheld which are similar to the exhibits in question and relate to the same employee benefits matters. And Kenra took reasonable steps to prevent disclosure by reviewing its documents for privilege before production. Kenra also promptly sought to rectify its error by moving for a protective order within nine days after learning of its inadvertent production.[4] Gilday points out that Kenra failed to notify her under Rule 26(b)(5)(B) to arrange for the information's return. However, Gilday had already testified

---

[3] Rule 502 does not apply if the parties have their own agreement regarding inadvertent disclosure of privileged documents. The parties in this case have no such agreement.

[4] Gilday argues that Kenra knew of the inadvertent production much earlier because it pointed Gilday to the documents in response to follow-up requests. In fact, Kenra pointed Gilday to nearly 40,000 pages [Docket No. 116, Ex. 2 at 9], which included the handful of documents inadvertently produced.

8

in deposition that she had no intention of returning certain documents Kenra claimed as privileged. Moreover, Gilday had already submitted the privileged documents in connection with her summary judgment response, so she could not merely return the items. Under these circumstances, Kenra's failure to comply strictly with Rule 26(b)(5)(B) is excused, and Kenra has not waived the attorney-client privilege.

Of course, had Kenra's counsel double- or triple-checked its privilege log against its production, this whole argument may have been avoided. However, as this Court observed in *Alcon Manufacturing, Ltd. v. Apotex Inc.*, No. 1:06-cv-1642-RLY-TAB, 2008 WL 5070465, at *6 (S.D. Ind. Nov. 26, 2008), "this type of expensive, painstaking review is precisely what new Evidence Rule 502 and the protective order in this case were designed to avoid."

This analysis does not apply to exhibit 23, the file Kenra received from human resources consultant Murphy. Kenra's brief asserts that "Kenra produced Murphy's file as it was received from him and did not realize it contained a privileged communication between Mr. McMeekan and attorney Bankovich." [Docket No. 113 at 8.] This assertion reveals that Kenra took no steps to prevent disclosure of the McMeekan-Bankovich communication, and it therefore waived the privilege as to exhibit 23.

Within seven days, Gilday shall return to Kenra all originals and copies of exhibits 1A, 1J, 1AA, 1RR, 1SS, 1TT, 1UU, 1VV, 1WW, 1XX, and 1NNN within her custody or control. Gilday shall no longer use or disclose any of these privileged communications. Gilday has seven days to object to Kenra's proposed redactions to these exhibits and to her summary judgment response brief and propose her own redactions. If Gilday does not object within this time, the Court will strike exhibits 1A, 1J, 1AA, 1RR, 1SS, 1TT, 1UU, 1VV, 1WW, 1XX, and 1NNN and

9

Gilday's summary judgment response brief and will replace them with the redacted exhibits tendered by Kenra.[5]

   B.   *Trade secrets and sensitive nonparty information*

Kenra argues that Gilday's summary judgment materials included exhibits containing trade secrets and sensitive nonparty information, including information about nonparties' salaries and job histories. Kenra argues that this information has been kept confidential and that its competitors could use these details to "cherry pick" executives. Kenra further argues that disclosure would be "patently unfair" to the nonparties, whose private financial information is irrelevant to this dispute and need not become public. Kenra requests that the Court strike these exhibits and direct Gilday to file versions with limited redactions.

Gilday, citing *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002), points out that the Seventh Circuit requires a showing that information is truly confidential before it may be kept secret. This Court has recently applied *Baxter* to deny a motion to seal when the moving party failed to show that a document was kept secret or that its release would cause competitive harm. *Meharg v. AstraZeneca Pharms. LP*, No. 1:08-cv-184-DFH-TAB, 2009 WL 2960761, at *3 (S.D. Ind. Sept. 14, 2009); *see also Thomas v. Bowman Heintz Boscia & Vician, P.C.*, No. 1:08-cv-0042-WTL-TAB, 2008 WL 5070471, at *3 (S.D. Ind. Nov. 26, 2008). Kenra, however, has shown that its documents were kept secret and has

---

[5]This procedure addresses the concern Gilday raises in her motion to strike Kenra's reply—that she has not had an opportunity to contest or negotiate Kenra's proposed redactions. [Docket Nos. 133, 137.] Although Kenra's proposed redactions are not a new argument, as Gilday claims, Gilday should have an opportunity to weigh in on the redactions to her summary judgment materials. Because this procedure addresses Gilday's concerns, her motion to strike [Docket No. 133] is denied.

explained why their release would create competitive harm.[6] And while it is true that *Baxter* concluded that salary information need not be sealed, 297 F.3d at 547, the salary information in question in that case belonged to a party. The salary information in this case belongs to nonparties, who cannot be said to have put their private information at issue by availing themselves of the courts. Under these circumstances, protection of Kenra's trade secrets and sensitive nonparty information is appropriate under Seventh Circuit precedent. Gilday has seven days to object to Kenra's proposed redactions to these exhibits and to Gilday's summary judgment response brief and propose her own redactions. If Gilday does not object within this time, the Court will strike exhibits 1V, 1MMM, 1SSS, 4, 6, 8, 24, 28, 29, 47, 48, 51, 54, and 56, as well as Gilday's summary judgment response brief, and will replace them with the redacted exhibits tendered by Kenra.

## IV. Conclusion

Kenra's motion for protective order [Docket No. 112] is granted in part. Within seven days, Gilday shall return to Kenra all originals and copies of exhibits 1A, 1J, 1AA, 1RR, 1SS, 1TT, 1UU, 1VV, 1WW, 1XX, and 1NNN within her custody or control. Additionally, Gilday shall review Kenra's proposed redactions to the documents described in this entry within seven days. If Gilday does not object to Kenra's proposed redactions, the Court will strike Gilday's documents and replace them with Kenra's proposed redacted versions.

Gilday's motion to strike Kenra's reply [Docket No. 133] is denied, and her motion for

---

[6]Gilday argues that Kenra has presented no evidence that the documents were maintained confidentially or that their release would case harm. Although affidavits would have been a preferable method of demonstrating these facts, the Court accepts counsel's statements in their briefs, which were signed under Rule 11.

leave to supplement her appendix of designated evidence [Docket No. 138] is granted.

Dated: 10/04/2010

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Anne L. Cowgur
BINGHAM MCHALE LLP
acowgur@binghammchale.com

Duane R. Denton
BINGHAM MCHALE LLP
rdenton@binghammchale.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

James K. Gilday
GILDAY DONAHOE & IRVIN PC
jgilday@gdilegal.com

Katherine E. Taylor
PLEWS SHADLEY RACHER & BRAUN
ktaylor@psrb.com

Jeffrey A. Townsend
PLEWS SHADLEY RACHER & BRAUN
jtownsend@psrb.com